**Plastiras VASILARAKIS, Petitioner**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

**No. 09–3901.**

United States Court of Appeals, Third Circuit.

Argued: June 21, 2011.

Filed: July 6, 2011.

Joseph C. Hohenstein, Esq. (Argued), Orlow, Kaplan & Hohenstein, Philadelphia, PA, for Petitioner.

Nicole Thomas–Dorris, Esq. (Argued), United States Department of Justice, Washington, DC, for Respondent.

Before: BARRY, AMBRO and COWEN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Plastiras Vasilarakis,[1] a citizen of Greece, has been a lawful permanent resident of the United States for more than forty years. In 2000, he pled guilty to one count of using three unauthorized access devices, in this case credit cards, with an intent to defraud, which violated 18 U.S.C. § 1029(a)(2). He committed that crime in 1995, five years before he signed his plea agreement and pled guilty. He successful-ly completed his three-year sentence of probation on January 8, 2004. In May of 2005—ten years after he committed his crime, nine years after he admitted his guilt and almost immediately began to co-operate with law enforcement, five years after he signed his plea agreement, and more than a year after he completed his non-custodial sentence—the Immigration and Naturalization Service ("INS") served him with a notice to appear for removal proceedings.

The INS sought to remove him based on his credit card fraud conviction, which it claimed was an aggravated felony under § 101(a)(43)(M) of the Immigration and Nationality Act. The Immigration Judge ("IJ") found him removable, the Board of Immigration Appeals ("BIA") affirmed, and Vasilarakis now petitions for review of the final order of removal.

He argues, among other things, that the IJ and BIA erred in finding that he is ineligible for relief under the version of § 212(c) of the Immigration and Nationali-ty Act that was in effect before the repeal of that section became effective in 1997. The IJ and BIA did not consider one of his arguments regarding the applicability of § 212(c) to the specific facts of this case, and we will, therefore, grant the petition for review, vacate the order of removal, and remand for further consideration.

## I. BACKGROUND

Because we write primarily for the par-ties, we summarize only the facts relevant to our analysis. As the IJ recognized, Vasilarakis' "case presents sympathetic factors." (A.R. at 74.) He entered the United States as a lawful permanent resi-dent in 1970, when he was just twenty-two years old, and he has lived in this country

---

1. The petitioner's last name is spelled as "Va-silarakis" and "Vasilirakis." For consistency with the prior decisions in this case, we will spell it "Vasilarakis."

since that time. He has returned to Greece only twice: in 1972 for vacation, and in 1976 to marry his wife of nearly thirty-five years.

His wife became a naturalized citizen in 2008, and his three sons are United States citizens. He also has grandchildren who live in this country. According to a letter from his wife, she does not drive and depends on him to take her to work and other appointments. She describes him as her soul mate and says that she "would not be able to make it on [her] own." (*Id.* at 388.) His daughter-in-law explains that he "lives for his family" and sees his granddaughters daily, and one of his granddaughters writes that "[h]e is always at [her] games and always cheering [her] on." (*Id.* at 398, 403.) According to his family members, he loves this country and has never thought about returning to live in Greece.

His doctor says that he "is being treated for a multitude of chronic medical problems," including "cardiac/circulatory ailments as well as ongoing issues with musculoskeletal problems of the low back and knee." (*Id.* at 409.) He has coronary artery disease and received two stents in 2003, and his cardiologist reports that he also has "severe anxiety." (*Id.* at 363.)

Vasilarakis carried out the crime at issue, which is his only conviction, by receiving cash advances on fraudulent credit cards at a race track. He used the money he received—$15,344.96—to pay for the fraudulent cards and to gamble. He claims—and the government does not dispute—that he began cooperating with the government in 1995 or 1996, and there is similarly no dispute that he admitted his guilt in 1996. He contends that he was ready to plead guilty at that time, but that the government delayed while it attempted to find—and did find—others who were more heavily involved than he was in the scheme.

He signed the plea agreement on April 10, 2000, and the Court accepted his guilty plea on September 25, 2000. His attorney in the criminal case agreed that "an early proffer session took place," but also stated that he could not "say there was a formal plea agreement prior to the actual entry in the year 2000." (*Id.* at 185–86.) Vasilarakis claims that he wanted to plead guilty much earlier than 2000, but could not do so because the timing of his plea was entirely in the hands of the government.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the final order of removal under 8 U.S.C. § 1252(a). We exercise plenary review over legal questions, and findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III. ANALYSIS

Prior to statutory changes in 1996, certain permanent resident aliens could "apply for a discretionary waiver from deportation," which the Attorney General had "broad discretion" to grant. *INS v. St. Cyr*, 533 U.S. 289, 294–95, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). This discretion extended at that time to those who committed an "aggravated felony."

The provision under which the Attorney General had that discretion, § 212(c), was repealed and replaced "with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens … [that] does not include anyone previously convicted of any aggravated felony." *Id.* at 297, 121 S.Ct. 2271 (internal quotation marks omitted). The effective date of

that statutory change was April 1, 1997. *Perez v. Elwood,* 294 F.3d 552, 562 (3d Cir.2002). The Supreme Court held in *St Cyr* "that § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect." 533 U.S. at 326, 121 S.Ct. 2271. Under applicable regulations, the inquiry is whether Vasilarakis "[a]greed to plead guilty ... to an offense rendering [him] deportable or removable, pursuant to a plea agreement made before April 1, 1997." 8 C.F.R. § 1003.44(b)(2). Thus, if Vasilarakis entered into a plea agreement or had actually pled guilty before April 1, 1997, his conviction would not prevent him from applying for discretionary relief under the former § 212(c), and the government does not suggest otherwise.

The IJ recognized that Vasilarakis claimed he cooperated as early as 1995, and that he admitted his guilt by June 14, 1996. But because he did not sign the plea agreement until 2000, the IJ concluded that he was ineligible for relief under the former § 212(c) and *St. Cyr.* The IJ did not consider his argument that he should be eligible to seek that relief because the government controlled the date on which he entered into a plea agreement, and he therefore missed the April 1, 1997 deadline not because he was reluctant to plead guilty earlier but rather due to the *government's* delay in moving his case toward a resolution. The BIA affirmed the IJ's decision and "agree[d] with the Immigration Judge that the controlling date is April 10, 2000, the date that the respondent signed the plea agreement." (*Id.* at 5.) Like the IJ, the BIA failed to consider what ap-

pears to be an undisputed fact that the government was solely responsible for Vasilarakis' belated entry of a plea agreement and plea of guilty.

We will, therefore, vacate the order of removal and remand for consideration of this issue.[2] We would expect that if on remand it is found that the delay—and in particular the delay after April 1, 1997—was occasioned by the government and not by Vasilarakis, he will be found eligible for relief under § 212(c). We urge that this matter be expeditiously brought to a conclusion.

## IV. CONCLUSION

We will grant the petition for review, vacate the order of removal, and remand this case for further proceedings consistent with this opinion.

---

**2.** Given this disposition, we need not reach Vasilarakis' other arguments, including his contention that he did not commit an aggra-

vated felony under 8 U.S.C. §§ 1227(a)(2)(A)(iii) and 1101(a)(43).